**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA,

v.                                                    Criminal No. 3:19-cr-29

ANIBAL LUCAS GARCIA,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION TO
DISMISS THE INDICTMENT (ECF No. 10) (the "Motion"), which, for the
following reasons, was denied by an ORDER entered on August 9,
2019 (ECF No. 32).

## BACKGROUND

### I.  Procedural Context

Anibal Lucas Garcia ("Lucas")[1] was charged in a one-count
indictment with violating 8 U.S.C. § 1326(a) and (b)(1) by re-
entering the country after having been removed. ECF No. 1. Lucas
filed the Motion on May 21, 2019, and the parties fully briefed
it. The Court received evidence and heard oral argument on the
Motion on August 7, 2019,[2] and the Motion was denied by an ORDER

---

[1]     The Court follows the lead of counsel for the Defendant in
referring to the Defendant as "Lucas."

[2]     The hearing on the Motion was originally scheduled for July
1, 2019, but was continued because Lucas provided late notice to
the Government that he intended to call an expert witness to
testify at the hearing. See ECF Nos. 20, 22, 24, 27.

entered on August 9, 2019. ECF No. 32.

## II.  Factual Background[3]

Lucas is a citizen of Guatemala, and does not have legal status in the United States. Lucas first entered the United States legally on a work visa (the "visa") on December 12, 2004. Gov't Ex. 1. The Government's witness, Deportation Officer Richard Tine ("Tine"), testified that Lucas entered the United States through the Atlanta, Georgia airport, on a visa that expired on July 15, 2005.[4]

Following the expiration of the visa, Tine testified that there was no record of Lucas leaving the United States. Then, on September 30, 2010, Lucas was convicted of felony forgery of public records in violation of Va. Code § 18.2-168 (hereinafter, the "public records forgery" or the "conviction"). Gov't Ex. 2. The offense date for the conviction was July 13, 2008, and the record is not clear why it took more than two years for Lucas to be convicted. Lucas was sentenced to two years imprisonment with one

---

[3]     The Government filed Lucas' Alien File, or "A-file," with the Court. See ECF No. 19.  At the August 7, 2019 hearing, the parties agreed to call the A-file "Joint Exhibit 1," which is how the Court will refer to it in this Opinion.

[4]     Tine testified that the type of visa that Lucas had would have required that there was an employer in the United States willing to accept Lucas as an employee. There is no evidence in the record reflecting who that employer was.

2

year and ten months suspended for the public records forgery.[5] Id.

After Lucas was convicted of the public records forgery, immigration officials began expedited removal proceedings against him pursuant to 8 U.S.C. § 1228, which establishes an administrative removal procedure for certain aliens who have been convicted of "aggravated felonies," as defined by the Immigration and Nationality Act ("INA"). On December 6, 2010, immigration officials served Lucas with a "Notice of Intent to Issue a Final Administrative Removal Order," or Form I-851 (hereinafter, the "I-851 form"). Gov't Ex. 3. The I-851 form is written entirely in English, and the "Certificate of Service" shows that the I-851 form was "explained and/or served. . .to the alien in the [English] language."[6] Id.

The front side of the I-851 form explained to Lucas that he was not lawfully present in the United States; that he had been

_____

[5] On the same day that Lucas was convicted for the public records forgery, he was also convicted of identity theft to avoid arrest (in violation of Va. Code § 18.2-186.3), and sentenced to six months' imprisonment (with five months suspended). Gov't Ex. 2. The offense date of the identity theft to avoid arrest was also July 13, 2008. Id. There is also evidence in Lucas' A-file that Lucas was convicted of obstructing justice without force (in violation of Va. Code § 18.2-460) on November 3, 2010, see Joint Ex. 1 at 33-L, and operating a motor vehicle without a license (in violation of Va. Code § 46.2-300) on September 30, 2010. See Joint Ex. 1 at 35-L.

[6] As discussed further below, Lucas contends that he did not speak or understand English when served with the I-851 form. His native language is Spanish.

3

convicted of an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43)(R);[7] and that he was removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Gov't Ex. 3 at 1. The I-851 form also notified Lucas that he could be represented by counsel; that he could respond to the charges on the I-851 form; and that he could remain in the United States for 14 days to file for judicial review pursuant to 8 U.S.C. § 1252. Id.

The reverse side of the I-851 form shows that Deportation Officer Long served the I-851 form on Lucas in person and explained it to him in English, as discussed above. Gov't Ex. 3 at 2. Lucas signed on a line indicating that he had received the I-851 form. Id. Below that section, Lucas selected a check box that stated: "I Do Not Wish to Contest and/or to Respond to Request Withholding of Removal." Id. Lucas then selected two check boxes below that. First, he selected a box that read:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of

---

[7] This statutory provision defines as an "aggravated felony" "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year" (emphasis added). The Government's witness, Deportation Officer Roy Long ("Long"), testified that he made the determination of whether the conviction qualified as an "aggravated felony" in this case by looking at the nature of the conviction and the length of the sentence that could be imposed.

removal. I wish to be removed to [Guatemala].[8]

Id. Second, he selected a box that read: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." Id. Both Lucas and Long signed and dated this section on December 6, 2010 at 10:45 a.m. Id.

Long testified at the August 7, 2019 hearing about the usual process of serving an I-851 form on an alien. Long explained that he would take both an English and a Spanish version of the I-851 form to his meeting with the alien, and would ask which language the alien preferred. If an alien did not speak English, Long would contact the so-called "language line," a telephone number that provided interpreter services and the I-851 form would be read by an interpreter.

However, if the alien spoke and understood English, it was Long's practice to read the entire I-851 form to the alien in English. Long further testified that the fact that the I-851 form was served by him on Lucas in English indicated to Long (from his experience) that Lucas would have indicated that he could read and understand English.

Also on December 6, 2010, a "Final Administrative Removal

_____

[8]    Long testified that he (Long) would have written "Guatemala" in the blank.

5

Order," or Form I-851A, was served on Lucas in person by Long. Gov't Ex. 4 (hereinafter, the "2010 Final Order"). The 2010 Final Order, signed by Assistant Field Office Director Matthew Munroe ("Munroe"), informed Lucas that the basis of his removal was his conviction for an "aggravated felony" pursuant to 8 U.S.C. § 1101(a)(43)(R) (for the public records forgery). Id. The 2010 Final Order was also written in English. Id. A "Warrant of Removal/Deportation," or Form I-205 (also in English), was also issued for Lucas on December 6, 2010, and signed by Munroe. Gov't Ex. 5.

On December 20, 2010, Lucas was removed from the United States pursuant to the 2010 Final Order. Gov't Ex. 5 at 2. When he was removed, Lucas received a "Warning to Alien Ordered Removed or Deported." Joint Ex. 1 at 6-L. That form, written in English, informed Lucas that, because of his removal for a "crime designated as an aggravated felony," Lucas was prohibited from "entering, attempting to enter, or being in the United States" "[a]t any time." Id.

After the December 20, 2010 removal, Lucas illegally returned to the United States on an unknown date. Gov't Ex. 6. Lucas was arrested and charged with a DWI (in violation of Va. Code § 18.2-266) in Chesterfield County, Virginia on June 26, 2018 (no disposition is listed). Id. at 4. Then, on February 3, 2019, Lucas

6

was arrested and charged in Chesterfield County with identity theft (in violation of Va. Code § 18.2-186.3); providing false identification to law enforcement (in violation of Va. Code § 19.2-82.1); contempt of court (in violation of Va. Code § 18.2-456); and another DWI (in violation of Va. Code § 18.2-266) (no dispositions of these cases are in the record). Id. at 3-4. He was indicted by the grand jury on the illegal reentry charge on February 21, 2019, see ECF No. 1, and was arrested on April 24, 2019. ECF No. 5.

## DISCUSSION

### I. Framework For Collateral Challenges To Prior Deportation Orders

Lucas has been charged with illegal reentry under 8 U.S.C. § 1326(a) and (b)(1). To prove that charge, the Government will have to establish, inter alia, that Lucas "has been denied admission, excluded, deported, or removed," and that, thereafter, he reentered the United States without the permission of the United States Attorney General. 8 U.S.C. § 1326(a). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court of the United States held that, in illegal reentry cases, an alien has a due process right to challenge the underlying deportation order. Thereafter, Congress codified the due process requirements in 8 U.S.C. § 1326(d). See United States v. Moreno-Tapia, 848 F.3d 162, 165-66, 169 (4th Cir. 2017); see also United States v. Guzman-

Velasquez, 919 F.3d 841, 845 (4th Cir. 2019). At bottom, Section 1326(d) "is concerned with failures of due process in an immigration proceeding that would make it fundamentally unfair to rely on a removal order coming out of that proceeding." Moreno-Tapia, 848 F.3d at 169. The statute focuses the inquiry on whether there were "procedural defect[s] in an immigration proceeding [that] insulate[] the resulting order from judicial review. . . ." Id.

Section 1326(d) sets out three elements that an alien must prove to challenge the underlying deportation order. In full, that subsection reads:

> In a criminal proceeding under this section [8 U.S.C. § 1326], an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (emphasis added). The Fourth Circuit has held that, to satisfy Section 1326(d)(3), an alien "must show that (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result

of the defects." United States v. El Shami, 434 F.3d 659, 664 (4th
Cir. 2005) (quoting United States v. Wilson, 316 F.3d 506, 510
(4th Cir. 2003)). To show prejudice, the alien must show that,
"but for the errors complained of, there was a reasonable
probability that he would not have been deported." Id. at 665. An
alien may be excused from meeting certain Section 1326(d)
requirements if the underlying deportation proceeding was
procedurally flawed in a material way. See Moreno-Tapia, 848 F.3d
at 169; United States v. Lopez-Collazo, 824 F.3d 453, 459-62 (4th
Cir. 2016) (due process violation where alien was served the I-
851 form in language he did not understand); El Shami, 434 F.3d at
662-64 (excusal from Sections 1326(d)(1) and (d)(2) and due process
violation where alien did not receive notice of his immigration
proceeding).

It is evident from the statutory text that the defendant must
satisfy (or be excused from) all three elements of Section 1326(d)
to succeed in a collateral challenge. The Fourth Circuit's recent
decision in United States v. Cortez, 930 F.3d 350, 355-58 (4th
Cir. 2019), confirms that view. There, the Court of Appeals held
that, while typically, the existence of a prior removal order is
sufficient to meet the government's burden in an illegal reentry
case, "there is an exception, allowing a defendant to collaterally
attack a removal order" when a flaw in the original proceedings

prevented the alien from seeking review of the removal order at the time it was issued. Id. at 356. But, "[u]nder 8 U.S.C. § 1326(d), a noncitizen must make each of three showings to come within that exception and mount a collateral attack," citing the three requirements of Section 1326(d), discussed above. Id. (emphasis added); see also id. at 358 (raising "significant doubts" that the jurisdictional argument raised by Cortez put him outside the requirements of Section 1326(d)).

The Fourth Circuit's approach outlined in Cortez confirms what this Court has held in several cases. See, e.g., United States v. Gonzalez-Ferretiz, No. 3:18-cr-117, 2019 WL 943388, *3-4 (E.D. Va. Feb. 26, 2019) (surveying Fourth Circuit and district court decisions and holding "that an alien may only challenge his underlying deportation order by satisfying the three requirements of Section 1326(d)"); see also Moreno-Tapia, 848 F.3d at 166; El Shami, 434 F.3d at 663; United States v. Gomez-Salinas, No.2:19cr10, 2019 WL 1141063, *2-4 (E.D. Va. Mar. 12, 2019) (Davis, C.J.) ("[A] defendant must satisfy all three provisions [of Section 1326(d)] before he may wage a collateral attack on the prior removal order."); United States v. Romero-Caceres, 356 F. Supp. 3d 541, 547 (E.D. Va. 2018) ("[D]efendant here may not challenge the June 2007 Removal Order unless he meets all three § 1326(d)

10

requirements.").[9]

The burden of proof to establish that the elements of Section 1326(d) have been satisfied "rests with the defendant." United States v. Galcia, No. 1:15cr59, 2016 WL 4054926, *2 (E.D. Va. July 26, 2016). And, that burden must be met by "a preponderance of the evidence." Id. (citing several cases). If the alien meets his burden, "the illegal reentry charge must be dismissed as a matter of law." El Shami, 434 F.3d at 663 (citing Wilson).

In sum, collateral challenges in Section 1326 prosecutions must proceed pursuant to Section 1326(d) because of the clear statutory text and articulated Congressional intent. [10]

---

[9] As the Court discussed in Gonzalez-Ferretiz, language in Moreno-Tapia and a recent opinion by Judge Brinkema suggest that collateral challenges outside of Section 1326(d) might be possible. See Moreno-Tapia, 848 F.3d at 170 ("We need not decide today. . .whether due process might in some circumstances demand that an immigration order based on an unconstitutional conviction be subject to collateral attack."); United States v. Rivera Lopez, 355 F. Supp. 3d 428, 435 (E.D. Va. 2018) (it "remains an open question" whether "due process requires that a defendant be given an opportunity to bring a collateral attack beyond the requirements and limitations of § 1326(d)") (emphasis in original).

Cortez teaches that such cases, if any, will be exceedingly rare. See Cortez, 930 F.3d at 356-58 (noting that Cortez must demonstrate that "there is some exception-to-the-exception that would allow him to bypass these normal requirements" of Section 1326(d)); id. at 357-58 (rejecting "exception-to-the-exception" based on Cortez's subject matter jurisdiction argument).

[10] The "Section-by-Section" analysis of the legislation that added Section 1326(d) states that the new subsection "allow[s] a court in a criminal proceeding against a deported alien who re-

Accordingly, if the Court determines that Lucas has failed to satisfy any of the three elements of Section 1326(d), his collateral challenge must be rejected, and the Motion will be denied. Conversely, if Lucas satisfies (or is excused from) the three elements of Section 1326(d), the illegal reentry indictment must be dismissed. See El Shami, 434 F.3d at 663.

## II. Analysis

Lucas makes two arguments in support of the Motion. See ECF No. 10 at 2-30. First, he argues that his 2010 public records forgery conviction was not an "aggravated felony," and that immigration officials acted ultra vires when they removed him on that basis. Second, he argues that he can satisfy the collateral attack requirements of 8 U.S.C. § 1326(d). The Government takes the opposite view on both arguments. See generally ECF No. 12. Neither argument made by Lucas is meritorious, and thus, the Motion was denied.

### A. Va. Code § 18.2-168 Is An Aggravated Felony Under The INA And The Ultra Vires Argument Fails

Lucas first argues that Va. Code § 18.2-168 is broader than

---

enters the U.S. to re-examine the underlying deportation order only if the alien" satisfies the three requirements of Section 1326(d). 140 Cong. Rec. S.5558-01 (daily ed. May 11, 1994), 1994 WL 181390, at *S5571 (emphasis added). "This language taken from United States v. Mendoza-Lopez, 481 U.S. 828 (1987), is intended to ensure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation orders." Id.

the generic federal definition of forgery, and therefore, applying the categorical approach, it cannot qualify as an "aggravated felony" for removal under the INA. See ECF No. 10 at 6-22. Accordingly, says Lucas, immigration authorities acted ultra vires, or without "subject matter jurisdiction to enter the [removal] order at all." Id. at 3.

Lucas' overbreadth argument is two-fold. First, he posits that Virginia forgery law allows prosecution for "simple possession" of a forged document without knowledge of its falsity. Second, he argues: (1) that the Court must consider "aiding and abetting" liability as part of the substantive offense; (2) that under Virginia law, "aiding and abetting" a crime can mean as little as "passive acquiescence in a crime—that is, a failure to object or intervene to prevent a crime without a duty to do so," ECF No. 10 at 13; and (3) that Virginia's definition of "aiding and abetting" a crime sweeps more broadly than the federal definition of "aiding and abetting," which requires "an affirmative act."[11] Id. Although Lucas recognizes that, in Alvarez v. Lynch, 828 F.3d 288 (4th Cir. 2016), the Fourth Circuit held

---

[11] This argument leads to absurd results because it would mean that no Virginia criminal statute could qualify as an "aggravated felony" under the INA or any other federal statute requiring the Court to apply the categorical approach. See, e.g., United States v. Brown, 333 U.S. 18, 27 (1948) ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences.").

that the offense proscribed by Va. Code. § 18.2-168 was an "aggravated felony," he argues that the overbreadth arguments that he is raising here were not raised in the Court of Appeals in Alvarez. ECF No. 10 at 20-22 (citing United States v. McLeod, 808 F.3d 972 (4th Cir. 2015) for the proposition that Lucas can raise a different argument under the categorical approach than one decided in a prior case).

The Government argues that the Alvarez decision (Virginia Code § 18.2-168 creates an "aggravated felony" offense) and that should end the analysis. See ECF No. 12 at 11-18. Alternatively, the Government asserts that Lucas misunderstands Virginia law on the overbreadth arguments that he makes. Id. at 12-21. The Government is correct on both points.

The Virginia Code provision under which Lucas was convicted in 2010 (and which was determined to be an "aggravated felony"), § 18.2-168, provides:

> If any person forge a public record, or certificate, return, or attestation, of any public officer or public employee, in relation to any matter wherein such certificate, return, or attestation may be received as legal proof, or utter, or attempt to employ as true, such forged record, certificate, return, or attestation, knowing the same to be forged, he shall be guilty of a Class 4 felony.

(emphasis added). Under 8 U.S.C. 1101(a)(43)(R), part of the INA, an "aggravated felony" for immigration purposes is: "an offense

relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." (emphasis added).

In Alvarez, the Court of Appeals was "asked to decide whether a Virginia conviction for forgery of a public record is an aggravated felony under the INA, which is defined as 'an offense relating to. . .forgery. . .for which the term of imprisonment is at least one year.'" 828 F.3d at 292. The Virginia statute considered by the Court of Appeals was the precise statute at issue in this case. The Fourth Circuit concluded that such a conviction was an "aggravated felony" because the Virginia forgery and the generic federal forgery definitions matched. See id. at 293-98; id. at 293 (noting that Congress used the language "relating to" the forgery offense, indicating that Congress intended a "more expansive definition").

The issue in Alvarez was the so-called "false making" element of generic federal forgery, and whether, under Virginia law, one could be convicted of forgery "where the document in question is genuine but merely contains some false information." Id. at 294-95. The Fourth Circuit determined that "one commits generic federal forgery only where a document is invalid or falsely executed. If a document is genuinely executed but merely contains

15

false information, a conviction for federal forgery cannot lie."
Id. at 294. Then, the Court looked to Virginia's public records
forgery statute (the same at issue here), and held that it requires
"the false making or materially altering with intent to defraud,
of any writing which, if genuine, might apparently be of legal
efficacy, or the foundation of legal liability." Id. at 294. And,
like federal forgery, a Virginia forgery defendant must have
altered the genuineness and authenticity of a document. See id. at
295.

In Alvarez, the Court of Appeals concluded that Alvarez had
failed to show that there was a "realistic probability, not a
theoretical possibility, that [Virginia] would apply its statute
to conduct that falls outside the generic definition of a crime."
Id. at 295-98 (alteration in original). And, then the Court held
that a conviction under Virginia's forgery statute was an
"aggravated felony" under the INA. Id. at 295-98 (alteration in
original); id. at 298 ("Virginia forgery as set forth in Virginia
Code Ann. § 18.2-168 is categorically 'forgery' under the INA;
therefore, Virginia forgery necessarily relates to forgery under
the aggravated felony provision.").

Lucas is correct that Alvarez did not directly address his
overbreadth arguments related to "simple possession" of a forged
document and aiding and abetting liability. However, as set forth

16

below, _Alvarez_ nonetheless establishes that Lucas' conviction under Va. Code § 18.2-168 is an aggravated felony. His "simple possession" and aiding and abetting arguments do not change the analysis.

First, _Alvarez_ made clear that the INA's definition of "forgery" "is one of the many aggravated felonies the INA defines 'expansive[ly]' as merely 'relating to' a generic federal crime." 828 F.3d at 293 (quoting _Denis v. Attorney Gen. of U.S._, 633 F.3d 201, 207 (3d Cir. 2011)); _see also Cardoza Salazar v. Barr_, __ F.3d __, 2019 WL 3483186, *2-4 (8th Cir. Aug. 1, 2019) (citing _Alvarez_ for the proposition that "[o]ther circuits have taken a similarly-expansive approach in considering the words 'related to forgery'"). When the words "related to" are used, the fact that the state and federal definitions do not precisely match "is not determinative." _See Alvarez_, 828 F.3d at 293 (citation omitted).[12] Thus, even if _Alvarez_ did not address the exact arguments that Lucas raises, the Court of Appeals' expansive understanding of the words "relating to" in 8 U.S.C. § 1101(a)(43)(R) teaches that what Lucas was convicted of was an "aggravated felony."

Second, Lucas has not shown a "realistic probability" that Va. Code § 18.2-168 would be applied to "simple possession" of a

_____

[12]     The _Alvarez_ Court concluded that the offenses matched; therefore, they necessarily related to each other. _See_ 828 F.3d at 293.

17

forged document. Lucas cites several cases for the proposition that possession of a forged document establishes a presumption that the possessor knew that the document was forged and warrants submitting a forgery case to the jury. See Oliver v. Commonwealth, 544 S.E.2d 870, 874 (Va. App. 2001)); Fitzgerald v. Commonwealth, 313 S.E.2d 394, 395-96 (Va. 1984). These cases recite the same definition of forgery that Alvarez does: forgery is the "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." Alvarez, 828 F.3d at 294; Fitzgerald, 313 S.E.2d at 395; Oliver, 544 S.E.2d at 874. In other words, there is a mens rea requirement to Virginia forgery.

"Possession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged," but it is not a conclusive presumption, and may be rebutted. See Fitzgerald, 313 S.E.2d at 395. The decisions cited by Lucas do not support that Virginia law has eliminated a mens rea requirement for a forgery conviction. Rather, those decisions simply explain the types of evidence from which a factfinder could make a finding that a defendant had the requisite mens rea. Lucas is incorrect that Virginia law permits a conviction for forgery based on "simple possession" of the forged document without the requisite mens rea. Thus, his argument that

18

Va. Code § 18.2-168 is broader than generic federal forgery because it allows a conviction for "simple possession" fails.

Third, Virginia aiding and abetting law is not broader than the generic federal definition, an argument that this Court has already rejected. See United States v. Ward, No. 3:18-cr-44 (E.D. Va. Dec. 6, 2018). In Ward, the Court rejected a similar argument in the context of a drug offense:

> Ward's aiding-and-abetting argument-that "Virginia's aiding and abetting liability is overbroad and indivisible," ECF No. 25- similarly fails, because there is no case law to support that Virginia has a different standard of aiding-and-abetting liability than the federal standard. Generic aiding and abetting has two aspects. First, the defendant must have the "'specific intent to facilitate the commission of a crime by someone else.'" United States v. Valdivia-Flores, 876 F.3d 1201, 1207 (9th Cir. 2017) (emphasis in original) (quoting United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005)). Second, the aider and abettor must render some assistance to the principal "'by words, acts, encouragement, support, or presence.'" United States v. Cammorto, 859 F.3d 311, 317 (4th Cir. 2017) (emphasis in original) (quoting Rosemond v. United States, 572 U.S. 1240, 1246 (2014)). Virginia's interpretation of accomplice liability is consistent with this formulation. See Thomas v. Commonwealth, 688 S.E. 2d 220, 235 (Va. 2010) (stating that the aider and abettor must commit "some overt act done knowingly in furtherance of the commission of the crime" or "share[] in the criminal intent of the principal committing the crime" and that an accomplice must "encourag[e], incit[e], or in some manner offer[] aid in the commission of the crime,"

> including by being "present lending
> countenance").

_Ward_, Mem. Op. at 13-14 n.3. Undeterred, Lucas cites one
unpublished Virginia Court of Appeals decision, _Spruill v.
Commonwealth_, 2002 WL 31655322 (Va. Ct. App. 2002) (unpublished),
for the proposition that "Virginia's version of accomplice
liability include[s] being present and failing to intervene while
a friend commits a crime." ECF No. 10 at 18. _Spruill_ states that
"mere presence is not sufficient to establish that one is a
principal in the second degree"; however, presence "at the
commission of a crime without disapproving or opposing it, is
evidence from which, in connection with other circumstances, it is
competent for the [judge or] jury to infer that he assented
thereto, lent to it his countenance and approval, and was thereby
aiding and abetting the same." 2002 WL 31655322 at *3 (emphasis
added) (alteration in original) (citations omitted). And, in
_Spruill_, the evidence showed that Spruill was part of (and had the
intent to be involved in) the check forging scheme. _See id._ at *3-
4. Thus, it was not simply Spruill's presence at the scene that
established her liability. _See id._ Read as a whole, _Spruill_ does
not establish that Virginia aiding and abetting law is broader
than federal law.

In sum, _Alvarez_ establishes that 8 U.S.C. 1101(a)(43)(R) is
read broadly to cover offenses "relating to" forgery, which Lucas'

conviction for "public records forgery" clearly is. And, Lucas' overbreadth arguments lack merit. Thus, his 2010 conviction under Va. Code § 18.2-168 was properly classified as an "aggravated felony" under the INA. Because Lucas' <u>ultra vires</u> argument rests entirely on the argument that Va. Code § 18.2-168 is <u>not</u> an "aggravated felony," the <u>ultra vires</u> argument likewise fails.[13]

## B. Lucas Cannot Satisfy The Requirements Of 8 U.S.C. § 1326(d)

Lucas next argues that he can satisfy the requirements of 8 U.S.C. § 1326(d) to collaterally attack the 2010 Final Order. At bottom, Lucas argues under Section 1326(d) that, although he purportedly waived his right to challenge the 2010 Final Order, that waiver was invalid because the I-851 form was not explained to him in a language that he understood (Spanish), and that, for like reason, he was not adequately informed that he could challenge the "aggravated felony" determination. <u>See</u> ECF No. 10 at 23-30. Lucas also asserts that service of the I-851 form in a language that he does not understand and deportation on a legally erroneous basis are due process violations, and that he can show prejudice.

---

[13]    Additionally, this Court has previously rejected similar <u>ultra vires</u> arguments in several cases, holding that arguments of the type Lucas raises must be brought pursuant to the requirements of 8 U.S.C. § 1326(d). <u>See</u> <u>United States v. Segura-Virgen</u>, __ F. Supp. 3d __, 2019 WL 2146594, *7-8 (E.D. Va. May 16, 2019); <u>United States v. Gonzalez-Ferretiz</u>, 2019 WL 943388, *5-6 (E.D. Va. Feb. 26, 2019). The Court rejects Lucas' <u>ultra vires</u> argument on the basis of those decisions too.

Id. at 25-30. The Government, on the other hand, argues that Lucas cannot show that: (1) he is excused from the administrative exhaustion requirement of Section 1326(d)(1); (2) he was deprived of judicial review, as required to satisfy Section 1326(d)(2); and (3) entry of the 2010 Final Order was fundamentally unfair, as required to satisfy Section 1326(d)(3). See ECF No. 12 at 6-19.

As set forth below, Lucas has the burden of demonstrating that his waiver of judicial review was invalid. He has not satisfied his burden here, and thus cannot show that he was deprived of judicial review. Further, because (as discussed above), Lucas' public records forgery conviction was properly classified as an "aggravated felony," he is unable to demonstrate prejudice. Thus, he cannot satisfy all three requirements of Section 1326(d), and the Motion was denied under Section 1326(d). See El Shami, 434 F.3d at 663 (Section 1326(d) requirements are "listed in the conjunctive, so a defendant must satisfy all three in order to prevail").

### (1) Lucas Is Excused From Section 1326(d)(1)

Lucas did not seek any administrative remedies for the 2010 Final Order (and, indeed, selected a check-box on the I-851 form indicating that he did not wish to challenge his removal). However, the Court has previously held that "in expedited removal proceedings involving the I-851 form (as here), an alien need not

have raised a legal challenge to the expedited removal in order to satisfy an administrative exhaustion requirement because there was no available administrative remedy." Segura-Virgen, 2019 WL 2146594 at *8-9. In other words, because the I-851 form does not provide an administrative route to challenge the "aggravated felony" determination, the alien is excused from the administrative exhaustion requirement of 8 U.S.C. § 1326(d)(1). See id.; Etienne v. Lynch, 813 F.3d 135, 137-42 (4th Cir. 2015). Because the same I-851 form is at issue here, the analysis from Segura-Virgen applies, and Lucas is excused from Section 1326(d)(1).

### (2) Lucas Has Not Demonstrated That He Was Deprived Of Judicial Review

To satisfy Section 1326(d)(2), Lucas must demonstrate that the 2010 removal proceedings improperly deprived him of judicial review. That he has not done.

There is no dispute that Lucas did not seek judicial review of the 2010 Final Order. The I-851 form states clearly that an alien has a right:

> to remain in the United States for 14 calendar days so that you may file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals as provided for in. . .8 U.S.C. § 1252. You may waive your right to remain in the United States for this 14-day period.

Gov't Ex. 3 (front side).

23

The I-851 form goes on to say that the alien can file a petition for review within 30 days (i.e. after removal from the United States). Id. And, on the back side of the I-851 form, Lucas selected a check-box stating: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." Gov't Ex. 3 (back side).

Notwithstanding that he signed a waiver of the right to judicial review, Lucas now argues that his waiver is invalid because the I-851 form was served on and explained to him in English, which he says he did not speak or understand.[14] ECF No. 10 at 23. Under immigration regulations, 8 C.F.R. § 238(b)(2)(v), immigration officials:

> must either provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands.

(emphasis added); see also Lopez-Collazo, 824 F.3d at 462 (describing this requirement).

Here, the I-851 form (which includes the waiver form) was written in English and was served on and explained to Lucas in

---

[14]    Lucas also argued that his waiver was invalid because he was not informed that he could challenge the "aggravated felony" determination. The Court has previously rejected this argument in the same context, and does so again for the reasons set forth in Segura-Virgen, 2019 WL 2146594 at *9-11.

English by Long. If Lucas did not speak or understand English in 2010, as he contends, any waiver of his right to judicial review cannot have been "considered [and] intelligent." See Mendoza-Lopez, 481 U.S. at 840; cf. Narine v. Holder, 559 F.3d 246, 249-50 (4th Cir. 2009) (waiver of appellate rights must be "knowingly and intelligently made"); see also Lopez-Collazo, 824 F.3d at 462 (due process violation where I-851 form was provided in English to alien who did not speak or understand English); United States v. Reyes-Bonilla, 671 F.3d 1036, 1044 (9th Cir. 2012) (waiver of rights on I-851 form "cannot be found to have been considered or intelligent where there is no evidence that the detainee was first advised of those rights in a language he could understand").

However, before assessing the validity of Lucas' waiver, it is necessary to determine which party bears the burden to prove the validity of the waiver.

### (a) Lucas Bears The Burden To Prove Invalid Waiver

This case more squarely presents an issue that the Court left open in Segura-Virgen: which party bears the burden in a Section 1326 prosecution to prove that the alien validly waived his right to judicial review. See Segura-Virgen, 2019 WL 2146594 at *9. The parties stake out opposite positions, with the Government arguing that it is Lucas' burden to show that his waiver was invalid, while Lucas argues that the Government must show that his waiver was

25

valid.

The Fourth Circuit has not addressed which party bears the burden of establishing the validity of an alien's waiver of administrative and judicial review rights in immigration proceedings, but unpublished authority suggests that the alien must "demonstrate that his waiver was invalid." See United States v. Lopez, 667 Fed. Appx. 837, 838 n.1 (4th Cir. 2016) (per curium) (unpublished).[15] The Fourth Circuit authority is consistent with the approaches of at least two Courts of Appeals that have held that the alien bears the burden to show that his written waiver was invalid.  See United States v. Soto-Mateo, 799 F.3d 117, 120-122 (1st Cir. 2015) (alien bears the burden of proving that written waiver is invalid); Richardson v. United States, 558 F.3d 216, 219-22 (3d Cir. 2009) (same). Taken together, Soto-Mateo and Richardson teach that, although the Government must demonstrate the existence of a written waiver, it is the defendant's burden to prove that the waiver is invalid. That is but a logical application of the rule that the burden is on the defendant to meet all three factors showing entitlement to relief under Section 1326(d). Where, as here, the defendant asserts an invalid waiver as the predicate for satisfying one of those factors, the burden is on

---

[15]    Of course, unpublished opinions are not binding, but they can be considered. Here, the decision in Lopez is informative.

the defendant to show invalidity and the defendant bears the risk of non-persuasion on that issue. See Soto-Mateo, 799 F.3d at 121.

Several other Courts of Appeals have implied that the alien bears the burden to show an invalid waiver without squarely so holding. For example, in United States v. Baptist, 759 F.3d 690, 695-97 (7th Cir. 2014), the Seventh Circuit held that the alien had failed to "put forth enough evidence to convince us that the stipulated removal order he signed was invalid." And, in United States v. Rangel de Aguilar, 308 F.3d 1134, 1137-39 (10th Cir. 2002), the Tenth Circuit held that the alien presented no evidence of a coerced waiver; that she did not understand the rights available to her; or that immigration officials mislead her as to her rights.

On the other hand, the minority position, which has been followed by the Ninth Circuit and at least two district courts in this Circuit, holds that it is the Government's burden to prove that the alien's waiver was valid. See United States v. Gomez, 757 F.3d 885, 893-94 (9th Cir. 2014); United States v. Lopez-Collazo, 105 F. Supp. 3d 497, 511 (D. Md. 2015), rev'd on other grounds, 824 F.3d 453 (4th Cir. 2016); United States v. Merino-Hernandez, 46 F. Supp. 3d 602, 607 (D. Md. 2014).

The approach outlined in Soto-Mateo and Richardson, and supported by the reasoning in Baptist, Rangel de Aguilar, and

Lopez, is persuasive and reflects the better view. As the First Circuit explained, "section 1326(d) places the burden on the defendant to demonstrate an entitlement to relief" and therefore "it follows that the defendant bears the burden of proving his eligibility for any exception to the statutory requirements," like excusal from seeking administrative or judicial review based on an invalid waiver. See Soto-Mateo, 799 F.3d at 121 (alterations and citations omitted); see also Richardson, 558 F.3d at 221-22 (discussing how a waiver of rights in a criminal proceeding differs from waivers in a civil deportation proceeding). The Fourth Circuit has held that the alien has the burden to satisfy the Section 1326(d) requirements, see, e.g., Cortez, 930 F.3d at 356 (alien must make three statutory showings to collaterally attack prior deportation), and Lopez suggests that the burden extends to demonstrating that the alien's waiver of rights in an immigration proceeding was invalid. Lopez, 667 Fed. Appx. at 838 n.1. Applying the teachings of Lopez, Soto-Mateo, and Richardson, the Court holds that, in a prosecution under 8 U.S.C. § 1326, the alien bears the burden to establish that his or her written waiver of administrative or judicial review rights is invalid.[16]

---

[16]    Of course, this assumes that the Government has introduced a written waiver of such rights. See Soto-Mateo, 799 F.3d at 121 (alien bears the burden to show invalidity where the "government produces a written and signed waiver of rights"). The Court need not decide the result if the Government could not provide such a

## (b) Lucas Has Not Satisfied His Burden

Having established that Lucas bears the burden to demonstrate that his waiver of judicial review was invalid, the Court further concludes that Lucas' evidence does not satisfy his burden. The Court finds that Lucas has not met his burden to show that he did not speak and understand English in 2010 to render his written waiver of judicial review invalid.

The Government has presented Lucas' written and signed waiver of judicial review on the I-851 form. Gov't Ex. 3. Lucas then presented the results of an Oral Proficiency Interview ("OPI") that he did with Dr. Laura Middlebrooks ("Dr. Middlebrooks") on June 26, 2019. Def. Ex. A (hereinafter, the "Middlebrooks report"). According to the Middlebrooks report, Garcia (in 2019) ranks as a "Novice Low English speaker on the American Council of Teachers of Foreign Language (ACTFL) proficiency scale. . .the lowest possible rating." Def. Ex. A at 1.

Dr. Middlebrooks[17] testified during the August 7, 2019 hearing about the OPI and her administration of it to Lucas. She testified that the OPI is used to evaluate linguistic abilities and can be used in any setting in which linguistic abilities must be assessed.

---

written waiver.

[17]   Lucas presented Dr. Middlebrooks as an expert witness, and the Government did not object to that designation.

Middlebrooks further testified that Lucas rated as the lowest level novice English speaker and that, in her opinion, Lucas would not have been able to understand the I-851 form without the assistance of an interpreter.

On cross-examination, Dr. Middlebrooks acknowledged that: (1) she did not review the I-851 form with Lucas; (2) she did not inquire of Lucas how long he had been in the United States prior to 2019; (3) one can lose a foreign language skill if it is not used; and (4) the OPI tests language proficiency only at the time it was given (here, 2019). Dr. Middlebrooks acknowledged that she has no way to know (based on the OPI) whether Lucas' English-speaking skills were better or worse in 2010 than they are in 2019. Dr. Middlebrooks also testified that she utilized one technique to account for potential malingering (i.e. an attempt by the OPI interviewee to downplay his or her language skills): alternating between easier and more difficult questions.

On redirect, Dr. Middlebrooks stated that one would need to score in the "advanced" category on the OPI to understand the I-851 form. And, although the OPI cannot be administered retroactively, she opined that Lucas' language skills in 2019 and 2010 likely did not differ significantly. Finally, she confirmed that she had no evidence that Lucas was malingering.

The Middlebrooks report and Dr. Middlebrooks testimony do

provide evidence on Lucas' English proficiency in 2019 (that he is a "Novice Low English speaker"), when the OPI was administered. However, Dr. Middlebrooks acknowledged that the OPI could not be used to assess Lucas' language skills in 2010. She also acknowledged that she did not ask Lucas specifically about the I-851 form or about how long he had been in the United States. Nor could she specifically opine about Lucas' language skill in 2010 or how it might have changed between then and 2019. And, in perspective of the other evidence in the record, the evidence from Dr. Middlebrooks alone is insufficient to meet Lucas' burden that he invalidly waived his right to judicial review in 2010.

There is evidence in the record that, in 2010, Lucas actually spoke and understood English. Officer Long, who served the I-851 form on Lucas in English, testified that it was his standard practice to bring both an English and a Spanish I-851 form to his interview with the alien. He then asked the alien which language he preferred. If the alien preferred Spanish, Long would use the Spanish version of the I-851 form and call the "language line" to have the I-851 explained to the alien in Spanish. Although Long testified that he did not specifically remember Lucas, he testified that the fact that he (Long) had served and explained the I-851 form in English means that, in 2010, Lucas would have indicated that he spoke and understood English. Otherwise, Long would have

used the Spanish form and activated the service of an interpreter on the language line. The testimony of Long, an experienced immigration officer, about his standard practice of serving the I-851 form, is powerful evidence that Lucas spoke and understood English in 2010.

Further, the record shows that Lucas was involved in state court proceedings in 2010. Yet, there is no evidence in the record showing that Lucas required a Spanish-language interpreter during the state court proceedings. The Court is unwilling to presume that the state court would allow a conviction of a defendant like Lucas without the aid of an interpreter if he required one. Thus, the absence of evidence that Lucas required an interpreter during the state court proceedings further undercuts Lucas' argument that he did not speak and understand English in 2010.

What is more, Lucas presented no evidence for the time period between 2005 (when the record shows that he entered the United States) and 2010 (when he was convicted of the "aggravated felony") suggesting that he did not speak or understand English. Government Exhibit 2 indicates that the offense date for the public records forgery was July 13, 2008, meaning that Lucas must have been in Virginia at that time. Assuming that Lucas remained in the United States for the entire period from 2005 to 2010 (there is no evidence that he left), and absent any evidence to the contrary

(there is none), it is reasonable to infer that Lucas was developing his English skills during that time.

Taken together, the Middlebrooks report and Dr. Middlebrooks' testimony do not establish that Lucas was served the I-851 form in a language that he did not understand. See 8 C.F.R. § 238(b)(2)(v). There is sufficient evidence in the record from which the Court concludes that Lucas spoke and understood English in 2010. He has not met his burden to show that he invalidly waived his right to judicial review based on an inability to speak English. Accordingly, he cannot demonstrate that he was improperly deprived of judicial review, and fails to satisfy Section 1326(d)(2).

### (3) Lucas Has Failed To Satisfy Section 1326(d)(3) Because He Cannot Establish Prejudice

In addition, even assuming that Lucas has satisfied Section 1326(d)(2), he would fail the prejudice prong of Section 1326(d)(3). To demonstrate prejudice, Lucas must establish that, "but for the errors complained of, there was a reasonable probability that he would not have been deported." El Shami, 434 F.3d at 665; Lopez-Collazo, 824 F.3d at 462. "This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." Lopez-Collazo, 824 F.3d at 462.

33

Lucas' argument on prejudice is that, had he not suffered the due process violations[18] in this case and had challenged his "aggravated felony" conviction, there is a "reasonable probability" that he would not have been deported. ECF No. 10 at 27. That argument is very much lacking in merit.

As discussed above, immigration officials properly classified his public records forgery conviction as an "aggravated felony." An alien who is subject to expedited removal proceedings under 8 U.S.C. § 1228 for having committed an "aggravated felony" is statutorily ineligible for discretionary relief, like voluntary departure. See 8 U.S.C. § 1228(b)(5) ("No alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion"); Lopez-Collazo, 824 F.3d at 457 (noting that "aliens subject to expedited removal are barred from discretionary forms of relief such as voluntary departure"); id. at 465 (same). In other words, where immigration officials properly categorize an alien's conviction as an "aggravated felony," his "deportation [is] a foregone conclusion." Id. at 466; United States v. Garcia-Martinez, 228 F.3d 956, 963 (9th Cir. 2000). And, the Court has

---

[18]     The due process violations that he asserts are: (1) that immigration officials served and explained the I-851 form in a language that he did not understand; and (2) that he was "not deportable as charged." ECF No. 10 at 25-26.

concluded above that Lucas was convicted of an "aggravated felony." Thus, there is no question that he would have been deported, even if he had challenged the "aggravated felony" determination. He thus cannot show prejudice, and fails Section 1326(d)(3).[19]

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (ECF No. 10) was denied by an ORDER entered on August 9, 2019 (ECF No. 32).

It is so ORDERED.

/s/    *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: September 3, 2019

---

[19]   The Court recognizes that, in assessing the prejudice requirement of Section 1326(d)(3), Lopez-Collazo requires that prejudice be examined under the law at the time of the alien's removal. See 824 F.3d at 462-67. In Lopez-Collazo, there was Fourth Circuit precedent at the time of the alien's removal establishing that his conviction was properly an "aggravated felony." Id. at 463-66. The District Court, however, had applied current law to determine that the conviction was not an "aggravated felony." Id. at 466-67. Conversely, at the time of Lucas' removal in 2010, there was no authority on whether Va. Code § 18.2-168 was an "aggravated felony" under the INA (Alvarez was decided in 2016). In the absence of authority of the sort that existed in Lopez-Collazo, the parties agreed that current law should be applied. ECF No. 28 at 6-7; ECF No. 29 at 2-3. Based on the "relating to. . .forgery" language in 8 U.S.C. 1101(a)(43)(R), the lack of merit to Lucas' overbreadth arguments, and the teachings of Alvarez, it is fair to conclude that, whether in 2010 or 2019, the Fourth Circuit would have held that Lucas' public records forgery conviction was an "aggravated felony." Thus, he cannot show prejudice.

35